A95A0357. HARVEY v. THE STATE.
(459 SE2d 433)

JOHNSON, Judge.

On Tuesday, October 12, 1993, a Fulton County police officer was dispatched to a public housing project to investigate suspicious activity involving a described individual. The officer observed a man matching the description he had been given standing with two other men. He asked the men for identification, which they provided. Harvey was one of the three. The officer called in the names of the three to his dispatcher and requested a computer check of the names through the Georgia and National Crime Information Centers. The computer check revealed an outstanding bench warrant for Harvey which had been issued in Cobb County on September 3, 1993. The

officer asked his dispatcher to confirm the status of the warrant. Through his dispatcher, he was assured by an officer of the Cobb County Sheriff's Department that computer records showed the bench warrant was still outstanding and valid. Harvey was placed under arrest pursuant to the bench warrant and was searched incident to his arrest. The officer found nine pieces of crack cocaine, a beeper, and an amount of cash in his possession. As a result, Harvey was indicted on the felony charge of possession of cocaine with intent to distribute.

It was later determined that the Superior Court of Cobb County had recalled the warrant in an order dated Thursday, October 7, 1993, and entered with the Clerk at 2:56 p.m. on the afternoon of Friday, October 8, 1993. Harvey moved to suppress the evidence produced by the search on the ground that Harvey's arrest was unlawful because the bench warrant had been recalled, and therefore, the search incident to his arrest was unlawful. It is from the denial of his motion to suppress the evidence that this appeal arises. Because the trial court's denial of the motion was proper, though for different reasons than those upon which its order was based, we affirm.

In denying Harvey's motion to suppress, the trial court correctly ruled that *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992), holding that there is no "good faith" exception to the Georgia exclusionary rule, is limited to those cases arising pursuant to OCGA § 17-5-30. The trial court erroneously concluded, however, that OCGA § 17-5-30 only covers searches conducted pursuant to a search warrant.[1] Both the Supreme Court and this court have consistently held that OCGA § 17-5-30 governs every case in which a defendant challenges a search and seizure, regardless of the grounds upon which the challenge is based. In short, we have held that OCGA § 17-5-30 *is* Georgia's exclusionary rule. See *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984); see also *Baez v. State*, 206 Ga. App. 522, 526 (425 SE2d 885) (1992); *King v. State*, 211 Ga. App. 12, 13 (438 SE2d 93) (1993).

Furthermore, the plain language of the statute shows that it covers all searches, not just those involving search warrants. OCGA § 17-5-30 (a) (1) expressly refers to cases where the defendant is alleging that a search and seizure conducted *without* a search warrant was illegal, while OCGA § 17-5-30 (a) (2) applies in situations where it is alleged that a search conducted pursuant to a search warrant was unlawful because the search warrant itself was either insufficient on its face, or was issued without probable cause, or was illegally executed.

In attempting to determine whether OCGA § 17-5-30 was limited

---

[1] The trial court's order stated: "*Gary v. State* . . . does not apply because OCGA § 17-5-30 is limited in its application to search warrants and does not extend to searches incident to arrest under an arrest warrant."

to searches conducted pursuant to search warrants rather than searches conducted without a warrant, the trial court referred to the legislative history of that Code section, which was originally enacted as a part of Act No. 578, Ga. L. 1966, pp. 567-572. Section 1 of that Act specifically refers to searches incident to lawful arrests. Having considered the plain language of both the Code sections and the original Act, we cannot agree with the trial court's apparent conclusion that this case is not governed by OCGA § 17-5-30 and that *Gary*, therefore, does not apply.

While the facts in *Gary* involve a search warrant, the holding is much broader. This court is bound by the Supreme Court's holding in *Gary*, which turns on the fact that Georgia's exclusionary rule was created by the legislature, not the judiciary. *Gary* holds that because the legislature did not include a "good faith" exception in the Georgia exclusionary rule, the courts are not free to do so, with the result that there is no "good faith" exception in Georgia unless and until the legislature sees fit to adopt one. The General Assembly has met in three regular sessions since *Gary* was decided, and, to date, no "good faith" exception has been added to the statutory scheme. Perhaps at some future time the legislature will consider that issue. *Gary* points out clearly that the United States Supreme Court's decision in *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677) (1984), which *judicially* creates a "good faith" exception to a *judicially* created exclusionary rule, does not apply in Georgia because Georgia's exclusionary rule is legislatively created. Therefore, the trial court's conclusion that the "good faith" exception carved out in *Leon* applies to this case is in error.[2]

Notwithstanding the trial court's erroneous reading of *Gary* and *Leon*, the motion to suppress in this case was properly denied because the search producing the evidence was a proper search incident to a lawful arrest. Contrary to Harvey's contention, the question of whether the arrest was lawful turns upon the issue of probable cause, not upon the fact that the bench warrant had been recalled. Probable cause was established by the officer's confirmation that a bench warrant for Harvey's arrest was still valid. There are a number of decisions from the United States Supreme Court which have considered the issue of probable cause to arrest in situations where an officer relies upon government records which turn out to be incorrect. See *Arizona v. Evans*, 514 U. S. ____ (115 SC ____, 131 LE2d 34) (1995); *Whiteley v. Warden*, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1971); compare *Hill v. California*, 401 U. S. 797 (91 SC 1106, 28 LE2d 484)

---

[2] The trial court's order stated: "The 'good faith exception' to the exclusionary rule adopted by the U. S. Supreme Court in *United States v. Leon* . . . applies to these facts."

(1971). At the time the arresting officer in this case acted, he not only had probable cause to arrest based upon the information he had been given, he would have been derelict in his duty if he failed to arrest. This is not the sort of situation to which the exclusionary rule was intended to apply. The arrest was lawful, and therefore the search incident to the arrest was lawful.

The trial court concluded that the officer had acted in good faith, and that the search was properly to be upheld. We agree that the officer acted in good faith, but we emphasize that the question of whether the officer acted in good faith, or acted reasonably, does not even arise under the facts of the case. The officer relied upon a state computer record showing the existence of an outstanding bench warrant, recently issued. Furthermore, demonstrating good and proper police procedure, he even made a specific inquiry, through his dispatcher, with the sheriff's office in the jurisdiction where the bench warrant was issued, and was assured that the bench warrant was still outstanding. More than this he could not be reasonably expected to do.

In making this determination, we are mindful of the Georgia Supreme Court's decision in *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988). After analyzing the circumstances surrounding Stringer's arrest, the Supreme Court found that law enforcement officers knew or should have known that a 21-month-old bench warrant had been recalled. Among other factors critical to that determination was that the arresting officer had the warrant in his possession for eight days before executing it, during which time he made no effort to verify its status. This amounts to the kind of police misconduct which the exclusionary rule was created to deter.

The exclusionary rule, whether enacted by the legislature as in Georgia, or created by the judiciary as in the federal system, though widely criticized, has not been replaced as a tool for deterring police misconduct. But, as with all rules of law, it must be applied in light of its purpose. Here, there was no police misconduct. Under facts such as these, there are two potential areas of police misconduct which are properly to be guarded against. The first is a situation as in *Stringer*, where the arresting officer did not even attempt to confirm the validity of the warrant despite being on notice of facts which called the validity of the warrant into serious question. The second area, alluded to but not present in *Stringer*, is presented where those law enforcement officials responsible for entering information regarding bench warrants in the computerized records either intentionally or negligently fail to promptly delete names from the list of outstanding warrants when the warrants had been recalled or otherwise cancelled. Such misconduct would not only subject any citizen to an arrest merely because he had once been legally subject to apprehension, but

would improperly increase the number of persons subject to search and the consequent seizure of admissible evidence. This second type of police misconduct is also the kind of impermissible and unconstitutional conduct against which the exclusionary rule was expressly adopted to protect. There is no police misconduct of the second type in this case.

Because nothing in the record before us supports a conclusion that there was any police misconduct in this case, there is nothing here to which the exclusionary rule could be properly applied. Therefore, the trial court's denial of Harvey's motion to suppress was not error.

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED JUNE 20, 1995 —
RECONSIDERATION DENIED JULY 11, 1995 —

*Steven W. Reighard,* for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Penny A. Penn, Juliette O. W. Scales, Assistant District Attorneys,* for appellee.