## A98A0854. THE STATE v. DUKES et al.
### (507 SE2d 147)

RUFFIN, Judge.

The State appeals from the trial court's order granting Edward Dukes' and George Sanders' motion to suppress evidence. Police discovered this evidence while searching a mobile home following Dukes' arrest for an alleged parole violation. For reasons which follow, we affirm.

The record shows that police officers went to a residence on Horton Street to arrest Edward Dukes pursuant to a warrant issued when Dukes violated the conditions of his parole. After arriving, the officers saw a person they thought to be Dukes leave the residence and enter a car. They also observed Sanders get into a moving van. Both Dukes and Sanders drove to a mobile home on Addison Drive, followed by the officers in an unmarked van.

Dukes and Sanders were already inside the mobile home when the officers knocked on the closed, outer screen door in the front of the mobile home. The solid front door to the mobile home was open, allowing the officers to see through the screen door into the mobile home. The officers knocked on the door and Dukes told them to "come in." When the officers entered the mobile home, one of them told Dukes that they had a warrant for his arrest and instantly arrested him.

While searching Dukes incident to his arrest, the officers discovered a candy bottle containing 59 rocks of cocaine in his right rear pocket and "a wad of cash" in his left front pocket. According to the officers, they handcuffed both Dukes and Sanders after searching Dukes. The officers explained that they handcuffed Sanders for their safety and to detain him for the purpose of investigating the drugs and cash found on Dukes. Although the officers did not consider Sanders to be under arrest at that time, they acknowledged that he was being detained and was not free to leave.

After handcuffing Dukes, Officer Robert Curott requested and obtained permission from him to search the residence. According to the officers, Sanders told Officer Frank Farr that he lived in the mobile home as the roommate of Dukes. Officer Farr testified that Sanders also gave permission for the officers to search the residence. According to Officer Farr, Sanders told him later, during the search of the mobile home, that he was just moving into the trailer. The search of the mobile home revealed a paper bag containing ten pieces of suspected crack cocaine in the dryer lint trap. The officers also found "some type of cell phone or telecommunications thing with Mr. Dukes's name on it and the Addison Drive address."

Sanders testified and contradicted the police officers' version of events. According to Sanders, he never gave his consent for the officers to search the trailer. He also testified that he told Officer Curott that he did not yet live in the trailer and that he was in the process of moving in to rent it from Dukes. Sanders further claimed he was not handcuffed by the officers until after the search of the home revealed the crack cocaine found in the dryer.

Sanders moved to suppress evidence obtained during the search of the mobile home. Although there is no evidence that Dukes joined in this motion, the trial court and the parties acted as though both defendants had filed a motion to suppress. In an order entered on March 13, 1997, the trial court denied Dukes' and Sanders' motion to suppress.

The trial of the case resulted in a mistrial due to violations of the trial court's rulings on motions in limine. Sanders and Dukes subsequently filed an Amended and Renewed Motion to Suppress on April 24, 1997. Sanders joined in this motion. In a June 18, 1997 hearing,

the trial judge explained that he was granting a motion to suppress evidence found in Dukes' residence in a separate case, Case No. 96-CR-340X.[1] Dukes asserted in this hearing that the evidence obtained from his residence in Case No. 96-CR-340X resulted in the issuance of the parole warrant for his arrest. As a result, Dukes argued, the parole warrant was improperly issued and the evidence found after Dukes was arrested pursuant to that warrant must be excluded.

On September 15, 1997, the trial court's order granting the motion to suppress of both defendants in this case was filed with the clerk's office. In this order, the trial judge stated "it appearing that the original parole warrant, and therefore the subsequent search, were invalid, the Court hereby GRANTS the Motion to Suppress . . . as to both defendants under the authority of *Boatright v. State*, 225 Ga. App. 181 [(483 SE2d 659)] (1997) and OCGA § 17-5-30."

1. The State contends that the trial court erred when it granted defendants' renewed motion to suppress after the expiration of the term of court in which defendants' original motion to suppress was denied. In support of this contention, the state relies upon the well-established rule "that the trial court may set aside its own order ex mero moto[2] [cits.], so long as the order is vacated within the term. [Cits.]" *Chastain v. State*, 158 Ga. App. 654, 655 (281 SE2d 627) (1981).

We find no merit in this contention. The record shows that the trial court did not vacate its original order denying defendants' first motion to suppress; instead, the trial court granted a subsequent, renewed motion to suppress. Moreover, even if we were to assume, without deciding, that this general rule applies to an order denying a motion to suppress, this case falls within an exception to application of the rule.

"[A] trial court [can] rescind its order . . . where proceedings to vacate such order [are] begun during the term it was entered (the most important exception to the end of the term rule)." *Pledger v. State*, 193 Ga. App. 588, 589 (2) (388 SE2d 425) (1989). The terms of court for Barrow County commence on the last Monday in January, the first and second Mondays in February, May and November, and the second and third Mondays in August. OCGA § 15-6-3 (32) (B). In this case, both the second motion to suppress and trial court's order denying the first motion to suppress were filed with the clerk during the February term. As a result, this case falls within an exception to application of the general rule.

2. We reject the State's contention that the trial court erred

---

[1] The record in Case No. 96-CR-340X is not a part of the record in this appeal.

[2] "Of his own mere motion; of his own accord; voluntarily and without prompting or request." Black's Law Dictionary, 5th ed., p. 296.

when it found that the parole warrant issued for Dukes' arrest was invalid because the trial court suppressed only part of the evidence in Case No. 96-CR-340X. The record in Case No. 96-CR-340X is not a part of the record in this appeal and the State did not request that it be included. Additionally, the record in this case is silent about the reason or reasons the parole warrant was issued for Dukes' arrest. "[I]t is appellant's obligation to provide the record substantiating his claim, OCGA § 5-6-41, and in its absence, we must affirm as to that issue. [Cit.]" *Whiteley v. State*, 188 Ga. App. 129, 132 (2) (372 SE2d 296) (1988). Thus, for purposes of this appeal, we must assume that the trial court properly found that the parole arrest warrant was invalid.

3. The State contends the trial court erred when it found that this Court's decision in *Boatright v. State*, supra, required the trial court to grant the motion to suppress. According to the State, the facts of this case are "more akin" to those at issue in *Harvey v. State*, 266 Ga. 671 (469 SE2d 176) (1996).

In *Harvey*, the Supreme Court of Georgia upheld a search incident to an arrest which arose out of a bench warrant which, unbeknownst to the arresting officer, had been recalled. Id. at 673-674. Although the Court recognized that the defendant was not lawfully arrested pursuant to the bench warrant, it noted that "the validity of an arrest is not necessarily dependent upon the existence of a valid arrest warrant because if the person detained is outside of his home and probable cause to arrest exists at the time of detention, a warrant is not required." Id. at 672. The Court then upheld the arrest because it found that the recalled bench warrant, which the officer had confirmed to be valid through his dispatcher, provided sufficient probable cause for the arrest. Id. at 673.

In *Boatright*, the trial court denied a motion to suppress evidence obtained after an arrest pursuant to a probation arrest warrant. The probation arrest warrant was issued based upon evidence obtained during an unlawful search and seizure. Id. at 183. Because the probation warrant resulted directly from the illegal search, we found it to be invalid. Id.

Pursuant to *Harvey*, this Court then analyzed whether a warrantless arrest of Boatright was justified. Id. at 183-185. We concluded that Boatright's warrantless arrest was unlawful because "[t]here [was] no evidence of exigent circumstances, and no evidence of Boatright's consent to let the officers enter his home to arrest him. As Boatright's permission to search his home was given simultaneously with his illegal arrest, there is likewise no evidence of attenuation of the consent from the illegal arrest. . . . [Cit.]" Id. at 185.

The State seeks to distinguish *Boatright* based upon the following: (1) Dukes was arrested at a location other than his own home; (2)

the officers arresting Dukes committed no affirmative acts which invalidated the parole warrant; and (3) Dukes invited the officers into the mobile home. We find that none of these assertions authorizes this Court to disregard *Boatright*.

First, there is a factual dispute in the record as to whether Dukes resided in the mobile home. On appeal of a trial court's decision on a motion to suppress, " 'the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. (Cit.)' [Cits.]" *Sprauve v. State*, 229 Ga. App. 478, 479-480 (1) (494 SE2d 294) (1997). Thus, we cannot use the State's allegation that Dukes did not reside in the mobile home to distinguish *Boatright*.

Second, we are not persuaded by the State's assertion that *Boatright* can be distinguished because the particular officers executing the parole arrest warrant did not conduct the illegal search which invalidated the warrant. In *Boatright*, we distinguished *Harvey*, in part, because "it was the *affirmative* acts of the police themselves which invalidated the warrants in this case . . . , not [a] computer glitch." (Emphasis in original.) Id. at 184. There is no indication in *Boatright* that our reference to "the police" includes only the individual officers conducting the illegal search and we decline to limit our decision in this manner. See *McDaniel v. State*, 227 Ga. App. 364, 370-371 (489 SE2d 112) (1997) (Beasley, J., dissenting).

Finally, the fact that Dukes stated, "come in," in response to a knock on the door does not demonstrate his "consent to let the officers enter his home to arrest him." *Boatright*, supra at 185. There is no evidence in the record that the police officers were wearing uniforms, identified themselves as police officers or otherwise informed Dukes about the purpose of their visit.

Moreover, even if the officers lawfully entered the house, they had no probable cause to immediately arrest Dukes without a valid warrant. As we held in *Boatright*, a warrant which is invalid because it is based upon an unlawful search cannot serve as probable cause to arrest. Id. at 184. Unlike the valid warrant which was issued in *Harvey*, but later recalled, the warrant in this case was invalid from the day it was issued.

We find that this case is more closely aligned with *Boatright* and that the trial court did not err in granting Dukes' and Sanders' motion to suppress. Dukes' consent to search the home "was given simultaneously with his illegal arrest" and there is "no evidence of attenuation of the consent from the illegal arrest." Id. at 185.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED AUGUST 21, 1998 —
RECONSIDERATION DISMISSED SEPTEMBER 15, 1998 —

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellant.
*Kathleen J. Anderson, James W. Smith*, for appellees.